# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

KATHERINE RIVERA,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

Case No. 1:16-cv-1930-GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF KATHERINE RIVERA**

**I.  INTRODUCTION**

Plaintiff, Katherine Rivera ("Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs (Docs.15 and 16) which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] After reviewing the administrative record, the Court finds the decision is supported by substantial

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 6 and 9).

1

evidence. Accordingly, the Court denies Plaintiff's appeal.

## II.    BACKGROUND AND PRIOR PROCEEDINGS

### A. Background

Plaintiff worked as a home care provider full-time and decreased her hours to part-time (three to four hours per week) due to health concerns. She previously applied for DIB and supplemental security income pursuant to Titles II and XVI of the Social Security Act in 2002 and 2010, and each was denied at the hearing level. AR 18; 79-86; 89-98. She most recently applied for DIB on December 4, 2012, alleging disability beginning August 31, 2012, due to fibromayalgia, lupus, degenerative disc disease, high blood pressure, osteoarthritis, and rheumatoid arthritis. AR 18; 213-220; 237. The parties agree that Plaintiff properly exhausted her administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 11, pgs. 3-4 and Doc. 16, pg. 2). Therefore, this appeal is a review of Administrative Law Judge Sharon Madson's ("ALJ") decision issued on July 24, 2015, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 18-26. Plaintiff is challenging this decision on the basis that the ALJ did not properly assess her mental health impairments.

### B. Summary of the Medical Record[3]

In August and November 2012, Plaintiff reported being depressed to her primary care physician. AR 374; 378. In March and May 2013, she presented at Adventist Health Central Valley Network (Adventist) complaining of anxiety and "stress + depression." Plaintiff was advised to follow-up with mental health services. AR 370-371; 412; 413 (duplicates at 467-468).

On September 4, 2013, state agency physician Dr. A. Garcia, M.D., assessed Plaintiff's disability application at the initial level and found Plaintiff was not disabled. AR 104. On January 3, 2014, Dr. Mark Berkowitz, Psy.D., a state agency psychologist, reviewed the medical record in connection with Plaintiff's reconsideration application. AR 105-116. Dr. Berkowitz noted that Plaintiff had not previously alleged a mental impairment. Moreover, in her application for reconsideration, she alleged a worsening of physical conditions, but no additional mental

---

[3] Because Plaintiff has only raised issues related to her anxiety and depression, only medical records related to these impairments will be summarized and discussed in this opinion.

impairments. Dr. Berkowitz performed a psychiatric review technique assessment and concluded that Plaintiff did not have a medically determinable impairment. AR 112.

In September and December 2014, Plaintiff was diagnosed with minimal and mild depression. AR 15 580; 583. In February 2015, she saw physician's assistant Nora Martin, PA-C, at Family Healthcare for toe pain and a related toe nail infection. AR 576. At this visit, Ms. Martin noted there was a "concern" for depression based on a screening questionnaire Plaintiff completed, and Plaintiff agreed to a behavorial health evaluation. AR 576. On psychiatric examination, Ms. Martin described Plaintiff as "alert [and] oriented, [with] cognitive function intact; cooperative with [the] exam; good eye contact; judgment and insight good; mood/affect full range; no auditory or visual hallucinations; speech clear; thought content without suicidal or homicidal ideation [or] delusions; [and] thought process logical, [and] goal directed" AR 578. Ms. Martin noted that Plaintiff reported a history of depression/depressed mood and diagnosed a depressive disorder not elsewhere classified. AR 578.

In March 2015, Plaintiff was referred to Meghan Nash, Psy.D., by Ms. Martin. AR 573. Plaintiff claimed that she had been depressed "off and on" for over ten years, and that it reoccurred "a few months ago." AR 573. It was noted that Plaintiff's husband had passed away in 1995 and she was still grieving this loss. AR 573. On screening, Plaintiff indicated that she had little interest or pleasure in doing things nearly everyday; felt down depressed or hopeless nearly every day; did not have any trouble falling asleep or staying asleep; felt bad about herself and/or felt that she had let her famiy down nearly everyday; had trouble concentrating on things such as reading or watching television nearly everyday; but had no suicidal or homicidal ideation. Plaintiff indicated that she was not interested in a medical consult to explore possible psychotropic medication intervention because she is taking "too many" medications and they upset her stomach. Plaintiff described her coping mechanisms as walking for thirty to sixty minutes per day, talking to her mother and four daughters about her physical condition, and that she would "keep busy by cleaning or taking care of things at home." AR 573. Dr. Nash described Plaintiff as tearful but cooperative, and diagnosed moderate major depressive disorder, recurrent episode. AR 574. Dr. Nash recommended that Plaintiff pace her physical activities by doing light

exercise everyday and engaging in relaxation techniques including "deep breathing" and using imagery to improve her mood. AR 574.

In April 2015, Plaintiff's reported similar symptoms as in March 2015. AR 570. She told Dr. Nash that she currently was "agitated" because she wanted to move back to Colorado, but her adult children did not want to move. Plaintiff again indicated that she did not want any medication. She reported occasional racing thoughts and that she missed her last medical appointment because she slept all day. AR 570. On examination, Dr. Nash again described Plaintiff as "tearful" but "cooperative," "with intact thought process" and no suicidal thoughts or perceptual disorders. AR 571. Dr. Nash gave Plaintiff "supportive feedback," and encouraged "healthy coping strategies" including exercise, proper nutrition, making "time for self" and breathing exercises. AR 572.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a). [4] The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

---

[4] References to the regulations in this decision are to the 2015 regulations which were in effect at the time of the ALJ's decision.

4

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

### A. The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18-26. Specifically, the ALJ found that Plaintiff met the status requirements through December 31, 2016, and had not engaged in substantial gainful activity since August 31, 2012, the alleged onset date. AR 20. The ALJ identified fibromyalgia, seizure disorder, lumbar degenerative joint disease, and cervical degenerative joint disease as severe impairments. AR 20. However, she determined that Plaintiff's depression was a nonsevere impairment. AR 21-22. She also found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 22.

Based on the review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with additional limitations. Specifically, she found that Plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours in an eight hour day; and occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 22-26. Based on this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a home attendant. AR 25.

### IV. ISSUES PRESENTED

Plaintiff argues that the ALJ improperly found that her depression was not a severe impairment at step two. Specifically, she argues that under the pscychiatric review technique regulations, the ALJ was required to order a psychiatric consultative examination once she

determined Plaintiff's depression was a medically determinable mental impairment.[5] She requests that the case be remanded for further proceedings so that the effects of her psychological condition on her ability to work can be properly assessed. (Doc. Doc. 15, pgs. 5-14). Defendant contends that the ALJ complied with the regulatons and properly assessed Plaintiff's depression given the limited amount of information Plaintiff provided regarding her mental impairment. The Commissioner therefore argues that the ALJ's step two findings are supported by substantial evidence and reversal is not warranted. (Doc. 16, pgs. 6-13).

## V. STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VI. DISCUSSION
### A. The ALJ Step Two Analysis was Proper.

Plaintiff contends that she sought treatment for her depression and that the ALJ determined that her depression was a medically determinable impairment at step two. However, rather than obtain a consultative examination to assess her psychological conditions as required under the

---

[5] Although Plaintiff's arguments includes references to her anxiety, the record only makes passing references to her feeling anxious during a limited number of doctor's appointments. See e.g. AR 370-371; 412; 413 duplicated at 467-468. Moreover, as outlined above, she was only diagnosed with a depressive disorder. Since Plaintiff's complaints regarding her anxiety were minimal and her main mental impairment is depression, Plaintiff's references to her anxiety are misplaced.

regulations, the ALJ determined that Plaintiff's depression was not severe at step two without obtaining the proper medical opinions. She argues that because of this lack of assessment, the ALJ's formulation of the RFC, and hypotheticals posed to the vocational expert, did not contain all of Plaintiff's potential limitations which constitutes reversible error. (Doc. 15, pgs. 6-14).

Defendant argues that Plaintiff did not provide evidence of how her depression impacted her ability to work. Therefore, the ALJ properly determined that Plaintiff's depression was medically determinable, but that it was not a severe impairment. In doing so, the ALJ complied with the regulatory requirments for assessing mental impairments because she properly completed the psychiatric review technique and concluded that Plaintiff had no limitations in daily activities or social functioning; only mild limitations in concentration, persistence and pace; and she had no episodes of decompensation. (Doc. 16, pgs. 6-13).

*1. The Law*

At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment. The regulations define a non-severe impairment as one that does not significantly limit the claimant's physical and mental ability to do basic work activities. Basic work activities include physical functions;[6] capabilities for seeing hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment is not severe "if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 404.1529.

---

[6] Physical functions include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. 20 C.F.R. § 404.1521.

7

When evaluating the severity of mental impairments, a special procedure must be followed at each level of administrative review. See 20 C.F.R. §§ 404.1520a(a). The "special technique" (often referred to as the psychiatric review technique or "PRT") requires the adjudicator to determine whether the claimant has "a medically determinable mental impairment, and if so, to 'rate the degree of functional limitation resulting from the impairment' in four special functional areas - activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(a)(c)(3). These areas are known as the paragraph B critera. If the degree of limitation in the first three functional areas is 'none' or 'mild' and 'none' in the fourth area, it will generally be concluded that an impairment(s) is not severe. 20 C.F.R.§ 404.1520a(d)(1); *see also Chaudhry v. Astrue*, 688 F.3d at 666-667 (9th Cir. 2012) (ALJ found no severe impairment after finding the claimant had mild limitations in the first three areas and no limitation in the fourth area of functioning).

"At the administrative law judge hearing ..., [the ALJ] will document application of the technique in the decision," which means "[t]he decision must include a specific finding as to the degree of limitation in each of the [four] functional areas." 20 C.F.R. § 404.1520a(e), (e)(4); see *also Keyser v. Comm'r*, 648 F.3d 721, 725-26 (9th Cir. 2011) (ALJ's written decision must include specific findings as to the degree of limitation in all four functional areas), citing *Gutierrez v. Apfel*, 199 F.3d 1048, 1050 (9th Cir. 2000), *superseded by regulation*, and 20 C.F.R. § 404.1520a(e). If the ALJ finds that the claimant has at least one severe physical or mental impairment at step two, the ALJ will continue the sequential analysis and consider all impairments, severe and non-severe, during the remaining steps. 20 C.F.R. § 404.1523; *see also Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (in evaluating disability, ALJ considers "the 'combined effect'" of the claimant's impairments regardless of whether any individual impairment is severe). An ALJ may request that a medical expert review the file when completing the PRT, but it is not required. ("If the administrative law judge requires the services of a medical expert to assist in applying the technique but such services are unavailable, the administrative law judge *may* return the case to the State agency or the appropriate Federal component, using the rules in § 404.941 of this part, …) 20 C.F.R. § 404.1520a(e)(5).

*2. Analysis*

A review of the record reveals that the ALJ complied with the appropriate regulations when assessing Plaintiff's mental health impairments. The ALJ summarized Plaintiff's mental health treatment between 2013 and 2015 and found that Plaintiff's depression was a medically determinable impairment. AR. 21. In doing so, the ALJ rejected Dr. Berkowitz's opinion (who completed a psychiatric review) and found that Plaintiff's metal impairments were not medically determinable.[7] AR 21. Notwithstanding, the ALJ determined that Plaintiff's depression was not a severe impairment because Plaintiff did not meet the paragraph B criteria. AR 21. The ALJ documented her assessment in these areas and found that Plaintiff had: no limitations in daily activities and in social functioning; had only mild limitations in concentration, persistence or pace; and had no episodes of decompensation. AR 21. 20 C.F.R. § 404.1520a(e), (e)(4); *Keyser*, 648 F.at 725. The ALJ identified evidence that supported each finding, including Plaintiff's ability to live alone and take care of herself (daily activities), her ability to regularly visit others and her willingness to travel and move to be closer to family (social functioning), and Plaintiff's assertions of impaired concentration. AR 21, citing AR 398 (Plaintiff did "activities of daily living without assistance); AR 570 (Plaintiff described impaired concentration and expressed that she wanted to move to Colorado to be closer to family). Given these ratings, the ALJ appropriately found that Plaintiff's mental health impairments were not severe.

Plaintiff argues that the record was ambiguous because no doctor evaluated the record after Plantiff received treatment for her depression. Therefore, the ALJ had an affirmative duty to request further evaluation from a consultative examiner. However, in general, it is the duty of the claimant to prove to the ALJ that she is disabled. 20 C.F.R. § 404.1512(a); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989) ("The claimant bears the initial burden of showing that he [or she] is disabled."). To this end, she must bring everything that supports a disability determination

---

[7] The Court notes that Plaintiff's treatment for her depression occurred after Dr. Berkowitz's assessment. Dr. Berkowitz found that Plaintiff's depression was not a medically determinable impairment, therefore, he was not required to complete all steps of the special techinique assessing Plaintiff's impairments in all four of the paragraph B categories. 20 C.F.R. § 404.1545(a)(1) and (2) ("Under the special technique we must … determine if you have a medically determinable impairment … we must then rate the degree of functional limitations …")

9

to the ALJ's attention, including medical or other evidence relating to the alleged impairment and its effect on her ability to work. *Id.* The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). In his or her role, the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he or she may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3). However, the ALJ's obligation to obtain additional evidence is triggered only "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). When the ALJ finds support in the record adequate to make a determination regarding the claimant's disability, he or she does not have a duty to contact the doctors. *Bayliss, v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

In this case, Plaintiff did not present evidence to establish that her depression had more than a minimal effect on her ability to work. First, Plaintiff only began seeing a mental health professional for treatment for her depression in February 2015, approximately six months prior to the hearing. AR 570-574; 576; 578. None of her treating phsyicians or mental health care providers opined that Plaintiff's depression affected her ability to work, or assessed any functional limitations as a result of the depression. In fact, she received minimal treatment consisting of two counseling sessions with a mental health provider who introduced her to stress reduction and coping/calming techniques. Similarly, Plaintiff refused medication to treat her symptoms. AR 570; 573. Finally, and most importantly, she did present evidence that established her depression was a severe impairment throughout the application process. Although Plaintiff reported to health care providers that she had experienced depression on and off for ten years (AR 573), she did not list her depression on her disability application (AR 213-220; 237), nor did she

testify to its affects on her ability to work at the hearing before the ALJ. AR 62-71. In particular, when questioned by her attorney at the hearing about her depression, Plaintiff replied that she had been feeling depressed for " a year, maybes less." AR 73. When asked what it felt like to be depressed, Plaintiff responded that, she "just gets really frustrated because I can't do what I used to do. And I get depressed because I can't perform what I used to perform." AR 73. There was no further testimony or questioning by Plaitniff's attorney with regard to her depression. Further, the only hypothetical posed to the VE by Plaintiff's attorney, which he indicated was "based on Plaintiff's testimony today," *only* included physical restrictions. AR 76-77. After the ALJ asked Plaintiff's attorney if he had anything futher, the attorney responded that he had no further questions. AR 76-77. Thus, Plaintiff did not describe mental limitations that significantly restricted her ability to work such as her ability to handle simple instructions, use her judgment, respond appropriately to supervision, co-workers and usual work situations, or deal with changes in a routine work setting, which was required to establish a severe impairment. 20 C.F.R. § 404.1521(b).

Given this evidence, the record was not sufficiently ambiguous to trigger the ALJ's duty to seek further evaluation.[8] This is especially true since Plaintiff was represented by counsel who was responsible for bringing the relevant issues to the ALJ's attention. AR 58; See *Solorzano v. Astrue*, No. 5:11–cv–0369–PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan 10, 2012) ("Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed."). In light of the above, the ALJ applied the correct legal standards when evaluating Plaintiff's mental impairment. She complied with the PRT regulations, and her findings and assessment of Plaintiff's depression is supported by substantial evidence. Even

---

[8] The Court notes that Plaintiff cites to several sections of the agency's internal policy manuals – Program Operations Manual System (POMS) and the Hearings, Appeals, and Litigation Manual (HALLEX). (Doc. 15. pgs. 9 and 11). However, given these facts, the ALJ complied with these policies. Moreover, while these manuals can be used as persuasive authority when interpreting an ambiguous regulation, these manuals are not judicially enforceable.. *Kennedy v. Colvin*, 738 F. 3d 1172, 1177 (9th Cir. 2013) ( POMS may be entitled to respect to the extent it provides a persuasive interpretation of an ambiguous regulation, but it 'does not impose judicially enforceable duties on either this court or the ALJ.' "); *Lockwood v. Comm'r*, 616 F.3d 1068,1072-73 (9th Cir. 2010) ("HALLEX" and "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ"), citing *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003).

11

though Plaintiff disagrees with the ALJ's conclusions, she has not established any legal error with the ALJ's analysis. While the Court is sympathetic to Plaintiff's case, where more than one rational interpretation of the evidence exists, the ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954.

## VII. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. Accordingly, this Court ORDERS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Actng Commissioner of Social Security, and against Plaintiff, Katherine Rivera.

IT IS SO ORDERED.

Dated: **February 27, 2018**     **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE